ANNA GREEN

v.

WILLIAM HATHAWAY.

Lands of a decedent were ordered to be sold in partition and the proceeds divided among his four surviving children and two grandchildren, who were to take the share of their father, decedent's son Benjamin, who died after his father. Benjamin, whose estate is insolvent, was indebted to his father $10,000 for moneys advanced, and had given notes and a mortgage therefor.— *Held*, that Benjamin's declarations to third persons that he supposed his indebtedness to his father's estate would be deducted from his share thereof, were not sufficient to off-set that indebtedness against his children's share of the lands.

On hearing on petition, order to show cause and depositions.

*Mr. W. H. Vredenburgh* and *Mr. J. D. Bedle*, for petitioner.

*Mr. James Steen, contra.*

VAN FLEET, V. C.

This is a partition suit. William Hathaway died intestate in the month of December, 1876. His heirs-at-law were his four children, and two of his grandchildren. The two grandchildren were children of his son Benjamin. Benjamin died about two months before his father. An actual partition of the lands left by William Hathaway among his heirs-at-law, has been found to be impracticable without great injury to their interests, and the lands have, in consequence, been sold, and the proceeds of sale are now ready for distribution. Benjamin, at the time of his death, was indebted to his father in a sum exceeding $10,000, for which his father held three promissory notes and two bonds. The payment of one of the bonds is secured by a mortgage on lands. The notes and bonds all provide that interest shall be paid on the debts which they evidence from their respective dates.

Benjamin's estate is insolvent. John C. Hathaway, one of the children of William, has presented a petition, alleging that the sum which represents the debt of Benjamin to his father, or some part of it, was advanced by the father, under an agreement by Benjamin with his father that to the extent of the sum so advanced he would make no claim to a share of his father's estate, and praying that the sum so advanced to Benjamin shall be deducted from the share to be distributed to his two children, and divided among the four children.

The proceeds of sale in question are to be regarded as land. The lands were converted into money simply as a means of making partition, but for no other purpose. The question to be decided is to be dealt with in the same manner as though the thing to be divided still remained land. The court may, in adjusting the rights of heirs-at-law under the statute regulating the descent of real estate, when it appears that the ancestor has given or advanced any part of his " lands, tenements or hereditaments," to one or more of his issue, adjudge that the issue so advanced is barred of his right of inheritance to the extent of the land so given or advanced, but in order to warrant such an adjudication the thing given or advanced must be lands, tenements or hereditaments. *Rev. p. 297 § 1.* That is the plain language of the statute, and in the words of Chancellor Zabriskie: " There is no authority or decision for extending this provision beyond the clear meaning of the words." *Havens* v. *Thompson, 8 C. E. Gr. 321.* The same construction was adopted in *Linell* v. *Linell, 6 C. E. Gr. 83.* It is manifest, then, that the claim of petitioner rests exclusively on the agreement set up by him, and if it cannot be maintained on that, it cannot be maintained at all.

This court has already decided that an agreement by a child with its father, by which, in consideration of a sum of money presently paid by the father, the child agrees to make no claim to a share of its father's estate, in case he dies intestate, is valid, and may be enforced in equity, at the instance of the other children, should an attempt be made to assert a claim in violation of the agreement. *Havens* v. *Thompson, 11 C. E. Gr. 383.*

The justice of this doctrine is obvious. It is designed, in the first place, to compel the child to abide by its promise, and thus prevent the first expectations of the father from being disappointed—but for his trust in the promise he would have made a will—and in the second place to secure equality of division among those who have equality of right. But such agreements, when they concern or affect lands, are, like all others, subject to the statute of frauds, and unless they are in writing cannot be enforced. They may be inaptly expressed, or inartificially drawn, but if they are in writing, and the court can, with the aid of the surrounding circumstances, discern with reasonable certainty the meaning of the parties, it will carry them into effect, but not otherwise.

The proofs in this case, in my judgment, are wholly insufficient to establish any agreement whatever. There is no claim that there is anything in writing between the parties, except the notes and the bonds and the mortgage; and they are in the form in which such instruments are usually drawn, and contain nothing showing, even remotely, an agreement of the kind claimed. The proof in support of an oral agreement is nearly as scanty. There is not a word of evidence tending to show that the father and son ever came together for the purpose of negotiating such an agreement, and there is none that they ever made such an agreement. The evidence which it is insisted warrants the belief that such an agreement existed, consists of declarations by the son to third persons, that he was indebted to his father, and if he did not pay him, the papers which he had given would come against his share of his father's estate, or that he supposed or expected that the money which his father had advanced to him would be deducted from his share of his father's estate. But this, it will be observed, when interpreted most favorably for the petitioner, shows simply an expectation or a supposition, and not a promise or compact. The petitioner has failed to prove the agreement alleged, and his petition must therefore be dismissed, with costs.

But had a different conclusion been reached on the facts, it is impossible for me to see how any relief could have been given

to the petitioner in the present condition of the record. By the final decree made in this cause, the two grandchildren are each adjudged to be entitled to and to stand seized in fee of the equal undivided one-tenth part of the land sought to be partitioned. So long as that decree remains in force, it must be taken as fixing finally and conclusively the share or proportion of the proceeds of sale that the court must order to be paid to them. The petitioner does not ask to have the final decree opened or set aside. If the grandchildren were each entitled to have one-tenth of the lands set off to them in severalty, the court is bound, I think, so long as the final decree stands in that form, to see that they each get the same proportional share of the proceeds of sale.